## Case No. 16,863.

### VAN MARTER v. MILLER et al.

[15 Blatchf. 562; 4 Ban. & A. 124.] [1]

Circuit Court, N. D. New York.    Feb. 8, 1879.

PATENTS — CONSTRUCTION OF CLAIMS — TUBS FOR DISTILLING OILS.

1. The reissued letters patent granted to Barton P. Van Marter, August 17th, 1869, on the surrender of the original letters patent granted to him, January 19th, 1869, for an improvement in tubs for distilling essential oils, in claiming "the cover, when provided with the rubber ring, substantially as described," claim the arrangement only when the rubber ring is located between the cover and the ends of the staves.
[Cited in H. W. Johns Manuf'g Co. v. Robertson, 60 Fed. 905.]

2. The construction of the claim narrowed, in view of the state of the art.
[Cited in Consolidated Roller-Mill Co. v. Coombs, 39 Fed. 30; Westinghouse v. New York Air-Brake Co., 59 Fed. 596.]

3. The claim does not cover a device in which a rim is inserted within the tub a short distance below the top of the staves, and is fastened to the inner sides of the staves, and the rubber packing is placed upon such rim.

[This was a bill in equity by Barton P. Van Marter against J. Horton Miller and others to restrain the infringements of certain letters patent.]

C. W. Smith and James A. Allen, for plaintiff.

J. Welling, for defendants.

WALLACE, District Judge. This is an action for the infringement of a patent granted to the complainant, January 19th, 1869 [No. 81,115], and reissued August 17th, 1869 [No. 3,612], for an improvement in tubs for distilling essential oils. In a former suit brought in this court upon the patent [case unreported] it was decided by my predecessor, that the complainant's device was a patentable improvement, and was not anticipated by the devices theretofore used, so far as appeared from the proofs in that case. It was not necessary, however, for the purposes of that case, to determine the precise scope and limitations of the several claims of the patent, and this was not attempted. It will be necessary, in this case, to define them with precision.

In construing a patent, it is, first, pertinent to ascertain what, in view of the prior state of the art, the inventor has actually accomplished, and, this having been found, such a construction should be given as will secure

1 [Reported by Hon. Samuel Blatchford, Circuit Judge, and by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

the actual invention to the patentee, so far as this can be done consistently with giving due effect to the language of the specification and claim.

The improvement contemplated by the patentee consists in the employment of several devices, some of which it is not necessary to refer to now, because their consideration is in no way involved in this case. The particular improvement now in question was intended to remedy the difficulties experienced in filling and emptying the tub with the plant during the process of distilling, and also to obtain a more efficient joint, to prevent the escape of the steam during the distilling process.

In the tubs formerly used, the top of each tub was closed by a head similar to a barrel head, but which had an opening and cover considerably less in diameter than the head, and which was some two feet in diameter, through which the operator was obliged to pack and remove the plant. This was a tedious operation, it being necessary that a man should get into the tub and arrange the plant as passed in through the opening, and, after distillation, the straw was slowly removed by a hook. To render the opening, when closed, steam tight, the cover, when inserted, was coated with a paste which closed the joint, and was strongly fastened in its place. During the process of distilling, the steam dissolved the paste and escaped through the seam in the opening, more or less. To remedy these difficulties, the patentee proposes to so construct the tub as that the cover will constitute the entire top of the tub, and be readily removed from, or adjusted to, the sides, at the will of the operator, and to employ a "rubber ring between the cover and the upper ends of the staves, by means of which, when pressure is applied to said cover, a steam tight joint will be produced."

Others, before the patentee, had used the tubs with covers extending over the entire top of the tub, the ends of the staves being bevelled, and the edges of the cover bevelled, also, to correspond. With some of these constructions a paste was applied to cover the seam; with others canvas was inserted in the seam; and one tub was used with a thin rubber covering extending over the entire inner face of the cover.

The operation of these various contrivances was more or less satisfactory, but none of them presented such an efficient and convenient apparatus as the complainant's. The advantages obtained by the complainant are thus summarized by Judge Hall: "The placing of india rubber packing upon that part of the cover resting upon the upper ends of the staves of the tub, thus allowing the upper head formerly used in the tub to be entirely removed, and thereby facilitating the removal of the charge after distillation, and also enabling the heavy pressure required to make the joint steam tight to act directly upon the

ends of the staves, as the portion of the tub which can best resist it, was a very decided improvement."

While, undoubtedly, the complainant effected a better organization of the distilling tub, mechanically, than was found in those theretofore used, it is somewhat difficult to discover what there was of invention or patentable novelty in what he did. There was nothing new in employing a cover which constituted the entire head of the tub; nor was there in employing rubber packing to make a joint steam tight, because that was a well-known expedient. There was nothing involving invention in the means employed to fasten down the cover during distillation, and this is not even contended for in this case. The patentee employed rubber packing in a seam between the ends of the staves and a cover extending over the entire tub, when others had employed paste or canvas. Upon the authority of the former case, this is to be considered as invention, but it is invention which resides within very narrow boundaries.

Turning to the language of the description in the patent, the location of the rubber ring between the cover and the ends of the staves is treated as of controlling importance, and is uniformly referred to as between the cover and the ends of the staves. However the mechanical fact be, it seems clear, that the patentee regarded it as indispensable to the efficiency of his device, that the rubber ring should be located between the cover and the ends of the staves constituting the sides of the tub. His experts concur in this opinion, and the opinion of Judge Hall in the former case brought upon the patent, assumes that this location is of primary importance, as enabling the pressure required upon the cover to make it steam tight, to act upon the ends of the staves, as the strongest resisting point. In that case, the infringing device substantially appropriated this location of the rubber ring. The testimony of the complainant himself, given upon that trial, concedes that the rubber ring must rest, to some extent, upon the ends of the staves, to constitute an infringement.

The defendants here have inserted a rim within the tub, a short distance below the top of the staves, fastened to the inner sides of the staves, and upon this have placed the rubber packing. There is no difference in principle, whether the rim is fastened into the staves by mortising, or by nails, or is supported by brackets. By this arrangement the cover of the tub, when closed, is not supported by the ends of the staves, nor is the pressure required to hold down the cover resisted by the ends of the staves. Evidently, it requires no invention to substitute the defendants' construction for that of the complainant's, and the defendants have probably appropriated all the practical advantages of the complainant's device. This, however, does not suffice to make them infringers.

They escape because the complainant's improvement resides rather in the excellence of his mechanical construction than in the invention as conceived by him and as secured to him by his patent; and, while the defendants are not permitted to appropriate the invention, they are at liberty to avail themselves of anything else found in the complainant's device.

If the complainant had been the first to discover the utility of rubber as a steam packing, or the first to utilize the entire head of the tub as a cover, in distilling tubs, or even the first to apply rubber as a steam packing in a distilling tub, so that the entire head of the tub could be used as a cover, he would be entitled to a more liberal construction of his patent than is now accorded; but, even then, it would be difficult to construe the language of the specification so as to secure to him such an invention. As it is, the only claim which can be sustained is the one for "the cover when provided with the rubber ring, substantially as described," that is, when located between the cover and the ends of the staves.

The bill must be dismissed.