## BELLOWS–CLAUDE NEON CO. et al. v. SUN RAY GAS CORPORATION et al.

District Court, N. D. Ohio, E. D.   September 26, 1929.

No. 2382.

Smith & Freeman, of Cleveland, Ohio (William Bohleber, of New York City, Harold Elno Smith and William L. Day, both of Cleveland, Ohio, and Edwin J. Prindle, of New York City, of counsel), for plaintiffs.

Kwis, Hudson & Kent, of Cleveland, Ohio (Lloyd L. Evans and A. J. Hudson, both of Cleveland, Ohio, and George F. Scull, of New York City, of counsel), for defendants.

JONES, District Judge. This is a suit for infringement of Claude patent 1,125,476, dated January 19, 1915, calling for a system of illuminating by luminescent tubes, the effective date of the invention of which being November 28, 1910, when the corresponding French patent 434,525, was filed. Invalidity and noninfringement are interposed as defenses. Injunction and accounting are prayed for. Exceptional conditions requiring it, the case was referred to a master for full hearing upon all issues. The matter is now before the court upon exceptions of both parties to the report of the master finding the patent valid and infringed, but dismissing the bill as to individual defendants.

The validity of claim 1 of the patent upon which the plaintiffs rely has heretofore been upheld by the Circuit Court of Appeals for the Second Circuit in Claude Neon Lights v. Machlett, 27 F.(2d) 702, certiorari denied by the Supreme Court October 22d, 1928, 278 U. S. 634, 49 S. Ct. 32, 73 L. Ed. 551. Infringement also was found under a motion for preliminary injunction in the District Court for the Southern District of California; final default decree being entered therein. [No opinion filed.]

The defendants complain that the master accepted the adjudication on the validity of the patent in the Machlett Case as binding, and failed to give the issue of validity the benefit of original consideration independent of that appellate court's judgment. In the interest of uniformity of ruling, termination of litigation, and security of the inventor in his patent, the adjudication by an appellate court should be given controlling weight unless there is clear conviction of plain error in law or fact. Mast, Foos & Co. v. Stover Manufacturing Co., 177 U. S. 485, 488, 489, 20 S. Ct. 708, 44 L. Ed. 856; Penfield et al. v. Potts & Co. (C. C. A.) 126 F. 475, 478. It is not enough to urge added reasons for invalidity of the patent which were not presented to the superior court. There must be new facts, substantially dif-

ferent. Badische Anilin & Soda Fabrik v. Klipstein & Co. (C. C.) 125 F. 543, 546. So also is the principle applied as to such prior decisions on the issue of infringement, where the device, structure, or process cannot be substantially distinguished. Cincinnati Butchers' Supply Co. v. Walker Bin Co. (C. C. A.) 230 F. 453, 454. It is true in the latter case, and in Penfield et al. v. Potts & Co., supra, our Circuit Court of Appeals was speaking with relation to its own decisions on the same subjects; but I see no reason why the principle should not be extended to the decisions of outside courts, and upon the same considerations. Vacuum Cleaner Co. v. Thompson Manufacturing Co. (D. C.) 258 F. 239.

It may be doubted that the decision of the District Court for the Southern District of California is entitled to the controlling weight which it otherwise might have had if the decision had been made upon full and final hearing, rather than upon the motion for preliminary injunction. Meurer Steel Barrel Co., Inc. v. Draper Manufacturing Co. (D. C.) 260 F. 410. If there is here presented new evidence not before the appellate court for the Second circuit which presumably would have required a different ruling, such decision would lose much of its controlling effect. Conley v. Thomas (D. C.) 204 F. 93, 94.

The master found that no new facts were presented here on the question of validity which presumably would have led the appellate court of the Second circuit to reach a different conclusion. With this finding I agree. The argument of the defendants upon that question is largely an attempt to narrowly construe the scope given the patent under the language of the Circuit Court of Appeals decision. Regardless of the exact time when, or the process by which, the neon gas must be purified, the patentee's method of lighting requires that the impurities be eliminated before the tube is put in use. It is manifest from a reading of the opinion in the Machlett Case that the appellate court gave adequate and complete consideration of the claim here involved, and no useful purpose will be served by again covering the field.

Claim 1 of the patent here in issue reads as follows:

"A luminescent tube containing previously purified neon, and provided with internal electrodes for illuminating said gas, said electrodes being deprived of occluded gases and having an area exceeding 1.5 square decimeters per ampere, to decrease the vaporization of the electrodes and prevent the consequent formation upon the walls of the tube, in proximity to said electrodes, of deposits containing said gas, whereby the luminosity of the tube is maintained constant for a very considerable period of time without a fresh introduction of gas."

Simply described, the plaintiffs' system consists of a glass tube of desired length, filled with purified neon gas, which is excited to a glow by the passing of electric current introduced through wires attached to electrodes at each end of the tube and hermetically sealed therein. Alternating or direct current is applicable, although alternating current is recognized to be more practical and probably more economical. It involves also the use of a transformer to step up the voltage necessary to overcome the resistance to the electric current in the electrode and in the gas.

The means and method employed in the production of the plaintiffs' light are fully stated by Manton, Circuit Judge, in delivering the opinion of the appellate court, and the master has in his report described the elements and process of the patent. In the Machlett Case the Circuit Court of Appeals found infringement of claim 1 of the patent in a device different in character than this defendants' manufacture. The claimed infringement here relates to a cap type electrode manufactured and sold by the Sun Ray Gas Corporation in its Dry-O-Let sign. The master found that the inside of the cap electrode functions as an internal electrode operating in the same way and producing the same result as the plaintiffs', although having some conceded advantages. The defendants, however, contend that they do not rely upon a nominal distinction between internal and external electrodes, but assert a difference in function and mode of operating between its cap type and Claude's electrodes, such as shape and reduction of sputtering; the metal walls bathed in atmospheric air and in contact with metal conductors, permitting the ready passing of heat and retention of coolness in the electrode—all of which permit the defendants' light to operate with a ratio of area to current of 1.3 or 1.25, which is below the necessary limit fixed by Claude. But these claimed functional differences will not avoid infringement if they are merely improvements on what is disclosed by Claude. General Electric Co. v. Laco-Philips Co. (C. C. A.) 233 F. 96, 105; Procter & Gamble Co. v. Berlin Mills Co. (C. C. A.)

256 F. 23; Palmer v. E. Z. Waist Co. (D. C.) 278 F. 530. The evidence discloses that, regardless of means employed, the defendants' tube contains pure neon gas, and the electrodes therein are deprived of occluded gases. The use of these elements and processes were held to be infringement in the Machlett Case. See page 705 of the opinion.

Other claimed departures or advantages in the defendants' tube do not bring them without the range of equivalents to which Claude is entitled under his patent. A mounting of the defendants' electrode on the outside of the tube is merely a method of applying the cap type electrode, and does not alter its ultimate function. It seems reasonable to conclude from the evidence on the subject that an internal electrode is one which is in direct contact with the gas in the tube. The defendants' electrode has the same function, although the glass of the tube is not carried around the electrode, but is sealed to the electrode which forms the closing end of the tube. Nor do I think the reduction of sputtering and the operation in an electrode area less than Claude's minimum constitute an accomplishment not thought of by Claude, nor by others previously concerned with the action and relation of electrode and current as affecting the final operation of the light.

Claude was a pioneer in combining known forces and processes for the production of a new and useful kind of lighting. It is often easy to minimize originality when a new idea combines and adapts what has heretofore been known to the production of a desirable and valuable article, device, or process. As such inventor, Claude is entitled to a wide range of equivalents, and certainly sufficiently broad to cover what, after clearing away the technical phraseology, is no more than a departure or improvement of no substantial distinction. I think the defendants have overemphasized the distinguishing features of their tube as to the function of its metal cap type and external electrode. The function and result is the same as Claude's, although thought to be an improvement or advantage. The same purpose is effected by substantially the same method. The plaintiff was long in the field of practice and manufacture before the defendant came into existence, and has enjoyed a commercial success under the patent which cannot be doubted. Widespread imitation has resulted, which reflects the great tribute paid to an original and noteworthy contribution to an art alert for attractive and serviceable novelty.

The defendant was organized in January, 1927, under Nevada laws, for the manufacture of illuminated gas tube signs, and the defendants Woolrich and Mitchell were made directors. Under authority of the board of directors, those two began operations in Cleveland. The defendant Madine appears not to have had any official title, but was employed ostensibly to take charge of pumps, tubes, and glass work in connection with the manufacture of signs for the defendant. Madine had been made a defendant in the Southern district of California infringement suit, and as such was under injunction as to the Claude type electrode. He also had made application for patent on a method of attaching a cup-shaped electrode, in the early part of 1927, the assignment of which was made to the Sun Ray Gas Corporation, defendant.

The master concluded that the evidence failed to establish the individual liability of these defendants, although their acts border upon personal participation in infringement. The master's ruling may be justified as to Madine on the ground that the infringement here is not as to the tube manufactured in the California case, wherein Madine was enjoined, otherwise he might be subject to penalty and damages. If it appeared in the evidence that these individuals personally participated and profited by the infringing acts, either directly or indirectly, or had organized the corporation as a cloak for their own protection, I have no doubt that they might be subjected to a charge for damages; but the master found insufficient evidence upon which to so hold them. I see no reason, however, why they should not be enjoined as individuals for the better protection of the patent against future infringement. Their relation and acts under corporate authority are of such a character as to justify injunctive relief against them, though no accounting for damages will be ordered.

In other respects, the findings and report of the master will be confirmed, and a decree may be entered accordingly.